IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | CASE NO.: 1:20-cv-02522 |
| | ) | |
| Plaintiff, | ) | JUDGE: |
| | ) | |
| v. | ) | |
| | ) | **PLAINTIFF'S MOTION FOR** |
| CASE WESTERN RESERVE | ) | **TEMPORARY RESTRAINING** |
| UNIVERSITY, | ) | **ORDER AND PRELIMINARY** |
| | ) | **INJUNCTION** |
| Defendant. | ) | |

Pursuant to Federal R. Civil. P. 65, Plaintiff John Doe[1] ("Plaintiff" or "John Doe") moves for a temporary restraining order prohibiting Defendant Case Western Reserve University ("Case") from continuing with the hearing under its Sexual Misconduct Policy, which started this morning at 9:30 am. Right at the outset of this hearing, the Complainant Jane Roe delivered an opening statement and discussed the fact that she was proceeding to a hearing despite John offering to settle the matter by leaving campus until she graduated from Case. John objected to continuing the hearing on the basis that the hearing panel would be biased by learning of the offer of settlement and that the bias could not be cured by instructions to disregard Jane's discussion of the offer that she rejected. Even more problematic about this hearing is that John had previously requested that his student advisor have the right to cross-examine Jane consistent with Case's Interim Sexual Harassment Policy, the new Title IX regulations and recent case law under *Doe v. Rensselaer Polytechnic Univ.*, No. 1:20-cv-1185, ECF No. 16 (E.D. NY, October 16, 2020)(hereinafter referred to as "*Rensselaer*"). This request was also denied.

---

[1] Due to the fact that the allegations are sexually explicit in nature, all student names have been filed under Pseudonym. A Motion to File Under Pseudonym is being filed contemporaneously with this motion.

{K0816514.1}

If this hearing continues, Defendant will violate John's rights under Title IX and cause irreparable harm by forcing him to submit to a biased panel without any true means to test the credibility of Jane. Simply put, John wants Case to stop the hearing today and empanel a new hearing panel that follows the 2020 Interim Sexual Misconduct Policy and new Title IX regulations.

### I. Statement of Facts

John is a Case student in good standing with senior status. After this semester, John only has 10 credit hours to graduate. On July 20, 2020, Case received a report that Jane believed that John sexually assaulted her at his home almost a full year earlier, on September 21-22, 2019. Prior to the 2020 report, no report or complaint of sexual assault had been lodged against John.

On October 26, 2020, John emailed Case about trying to reach on informal resolution on the allegation. Case informed John to contact Jane's student advisor at the time, Tiffany Kish. On October 27, 2020, John, through undersigned counsel, contacted Ms. Kish and extended on offer of settlement. Unfortunately, the offer was rejected. John had an honest belief that like all settlement communications, the fact that there were prior settlement negotiations, and the details of his offers to Jane would not be raised at a later hearing.

Last Wednesday, November 4, 2020, John sent an email to Case objecting to the fact that it was using its old procedures to adjudicate John's case. This decision meant that John's counsel could not directly cross-examine Jane, or other witnesses, a guarantee afforded by the new Title IX regulations enacted on August 14, 2020 and Case's own revised policy. Case rejected this request and decided that John would have to use an indirect form of cross-examination by forwarding questions to the hearing panel chairperson and have that person pose vetted questions to Jane and other witnesses. John noted that this decision violated the recent *Rensselaer* opinion.

John proceeded to the hearing this morning. The hearing was conducted over zoom. Jane was asked to deliver an opening statement. Shockingly, Jane stated that when John's lawyers offered to settle the matter by having John leave campus, she knew that she had to proceed to a hearing to stop John from harming someone else. John objected to this statement and asked that the hearing stop and that Case convene a new panel. Case refused to stop the hearing and indicated that it would tell hearing panel members to disregard Jane's statements about settlement communications. John objected that the cautionary instruction could not un-ring the bell. John indicated that he would file for a restraining order to stop the hearing.

## II. Legal Standard

The Sixth Circuit requires a plaintiff seeking a temporary restraining order to prove four elements: "(1) a strong likelihood of success on the merits; (2) irreparable harm if relief is not granted; (3) granting injunctive relief will not cause substantial harm to defendants; (4) the public interest is best served by granting injunctive relief. *Certified Restoration Dry Cleaning Network v. Tenke Corp.*, 511 F.3d 535,542 (6th Cir. 2007). These four considerations are to be balanced; they are not prerequisites that must be met by the moving party. *Id*. As established by the Verified Complaint, and the law and evidence contained herein, it is clear that John will suffer irreparable injury unless he obtains injunctive relief.

## III. Plaintiff has a Strong Likelihood of Success on the Merits Under Title IX

Title IX is a federal statute designed to prevent sexual discrimination and harassment in educational institution receiving federal funding. 20 U.S.C. §1681. It provides that "no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving federal financial assistance." 20 U.S.C. §1681(a). A university runs afoul of Title IX when it follows a

clearly irregular investigative or adjudicative process. *See Menaker v. Hofstra Univ.*, 935 F. 3d 20, 33 (2nd Cir. 2019). Here, Case is allowing a clearly irregular process unfold before our very eyes, making a fair hearing impossible.

### A. Case should allow Cross-Examination allowed under the Interim Sexual Harassment Policy ("2020 Policy").

Case issued a 2020 Policy allowing student advisors the right to cross-examine witnesses, including the complainant. John requested that the 2020 Policy be applied and that the failure to do so would discriminates against him on the basis of his sex. John argued that this very issue was decided in *Rensselaer*.

In *Rensselaer*, the Court granted Doe a preliminary injunction prohibiting the college from moving forward with its adjudication process of his case. The college relied on the preamble to the new Title IX rules to support the position that the new procedures, such as the right to have attorneys cross-examine witnesses, did not apply retroactively. The Court did not agree with the college and held that not allowing the revised policy to apply raises a "powerful inference of sex discrimination." *Rensselaer* at 14. As the Court stated, "[s]imilarly, the Court finds that a school's conscious and voluntary choice to afford plaintiff, over his objection, a lesser standard of due process protections when that school has in place a process which affords greater protections, qualifies as an adverse action." *Id*. at 13. Based on the foregoing, John asks this Court to force Case to stop the hearing today and allow a new one based on the 2020 Policy or order a new hearing.

### B. Discussions of Settlement During a Hearing Infect the Ability of the Panel Members to Be Impartial.

It is well-established that settlement communications and their contents are well protected and subject to confidentiality of the highest degree. Indeed, "confidential settlement

communications are a tradition in this country." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F. 3d 976, 980 (6th Cir. 2003); *see also Jackson v. Gen. Elec. Aviation*, 2020 U.S. Dist. LEXIS 162862 at *6 (S.D. Ohio Sept. 4, 2020) ("There is a long-standing tradition that settlement discussions should remain confidential.").

This principle is grounded in Fed. R. Evid. 408, which provides that "evidence of conduct or statements made in compromise negotiations is…not admissible." Fed. R. Evid. 408. Moreover, "[t]here exists a strong public interest in favor of secrecy of matters discussed by parties during settlement negotiations. This is true whether settlement negotiations are done under the auspices of the court or informally between the parties." *Goodyear* at 980.

Courts consistently recognize the unmistakable benefits of settlement communications and why confidentiality is paramount. "The ability to negotiate and settle a case without trial fosters a more efficient, more cost-effective, and significantly less burdened judicial system. In order for settlement talks to be effective, parties must feel uninhibited in their communications…Parties must be able to abandon their adversarial tendencies to some degree." *Soc'y of Lloyd's v. Alfred A. Moore & Betty R. Moore Revocable Trust*, 2006 U.S. Dist. LEXIS 80963 at *10-11 (S.D. Ohio Nov. 1, 2006), *citing Goodyear* at 980. If this confidentiality is breached, "the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost." *Soc'y of Lloyd's* at 11.

In this case, Jane's disclosure of confidential settlement communications has eviscerated any semblance of fairness that John can hope to have. John is entitled to robust confidentiality with regard to any settlement communications. Any conclusion to the contrary negates the entire purpose for which these discussions are held confidential. Further, Case's claim that offering a "cautionary instruction" to disregard Jane's statements is unavailing. Jane's improper disclosure

placed John at a severe disadvantage, for which the only satisfactory remedy is a new hearing. Anything less flies in the face of a long-standing tradition to honor confidentiality.

### IV. John Will Suffer Irreparable Harm Absent Injunctive Relief

"Irreparable injury is suffered when monetary damages are . . . inadequate." *Multi—Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551-52 (4th Cir. 1994), abrogated on other grounds *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008) (2008) (citation omitted) (internal quotation marks omitted). Further, the party seeking injunctive relief must demonstrate that "irreparable injury is *likely in* the absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis in original).

Absent injunctive relief, John will be bound by a decision issued by a panel biased by Jane's improper disclosure and which is not following the new Title IX process. With just 10 credits remaining until he can graduate, John risks serious long-term harm imposed by a panel that is not impartial. It is no great stretch to assume that the panel may view the settlement communications as an indication of guilt. Case's instruction that Jane's statements should not be considered will not change the implicit bias that her statements carry. Moreover, to permit the hearing to move forward and reach a conclusion will permit it do so under outdated procedures. As noted in *Rensselaer*, denying a respondent the benefit of the new procedures raises a "powerful inference of sex discrimination." *Rensselaer* at 14. John faces untold consequences reached by a panel following procedures that have been recognized as insufficient to protect a respondent's rights. These procedures, when coupled with the panel's unwarranted knowledge of John's confidential offers of settlement, all but guarantee that John will not receive a fair hearing. No amount of monetary damages could remedy this harm and the consequences sure to flow from it. This factor weighs strongly in favor of John.

## V. Granting Injunctive Relief Will Not Cause Substantial Harm to Case

Should this Court grant injunctive relief, Case will suffer little to no harm, much less substantial harm. All that John seeks is that this hearing be halted and a new one be rescheduled, with proper procedures in place. This is no great burden for Case and is in fact something that John should have received in the first place. In contrast to John, who is facing imminent irreparable harm, Case will only need to schedule a new hearing and convene a new panel. A simple rescheduling does not amount to substantial harm and is more likely than not something that Case does on a regular basis. Because Case is not threatened with substantial harm, this factor lies in John's favor.

## VI. The Public Interest is Best Served by Granting Injunctive Relief

The public has an interest in ensuring that educational institutions follow proper procedure and do not engage in discrimination. Further, "[p]romoting compliance with Title IX serves the public interest." *Barrett v. W. Chester Univ. of Pennsylvania of the State Sys. of Higher Edn.*, No. 03-CV-4978, 2003 U.S. Dist. LEXIS 21095, at *50-51 (E.D. Pa. Nov. 12, 2003) (citing *Cohen v. Brown Univ.*, 809 F. Supp. 978, 1001 (D.R.I. 1992)). Accordingly, the public interest is best served by granting injunctive relief.

## VII. Conclusion

For the foregoing reasons, John requests that the Court halt the hearing being conducted today and order a new hearing applying the 2020 Policy and cautioning Jane not to discuss prior settlement negotiations.

Respectfully submitted,


*/s/ Susan C. Stone*
Susan C. Stone (0064445)
Kristina W. Supler (0080609)
KOHRMAN JACKSON & KRANTZ, LLP
1375 E. 9th St., 29th Floor
Cleveland, OH 44114
P: (216) 696-8700
F: (216) 621-6536
E: scs@kjk.com
   kws@kjk.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing *Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction* was served upon the following via email and/or regular mail this 9th day of November, 2020 to Peter M. Poulos, General Counsel, Case Western Reserve University, 10900 Euclid Ave., Adelbert Hall Room 311, Cleveland, OH 44106, *peter.poulos@case.edu* and Michelle R. Arendt, Senior Counsel, Case Western Reserve University, 10900 Euclid Ave., Adelbert Hall Room 311, Cleveland, OH 44106, *michelle.arendt@case.edu*.

    Respectfully submitted,

    */s/ Susan C. Stone*